IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES WHITTENBERG,

    Plaintiff,

vs.

V. BORTOLAMEDI, et al.,,

    Defendants.

No. CIV S-04-2225 GEB EFB P

ORDER AND FINDINGS
& RECOMMENDATIONS

This matter is before the court on defendants', Bortolamedi, Johnson and Yelton, motion to dismiss. Defendants Brown and Largent have not joined that motion or otherwise moved to dismiss. This order also addresses defendants' motion to compel discovery responses.

I. BACKGROUND

Plaintiff is a prisoner without counsel seeking relief for alleged civil rights violations. *See* 42 U.S.C. § 1983. This action proceeds on the October 20, 2004, complaint in which plaintiff alleges that defendants Bortolamedi and Yelton, both of whom are correctional officers at California State Prison, Solano, violated plaintiff's rights by drawing racially derogatory pictures on his prison identification card. Plaintiff further alleges misconduct by defendant Sargent Johnson – also a correctional officer – in handling plaintiff's administrative grievance against defendants Bortolamedi. More specifically, plaintiff alleges that defendant Johnson

failed to call all of plaintiff's witnesses and otherwise manipulated plaintiff's witness statements during the administrative grievance process. Plaintiff also alleges that defendant Yelton intimidated plaintiff's witnesses and interfered with plaintiff's attempts to collect their statements. Plaintiff names other correctional officers and officials as defendants, alleging, among other things, race-based retaliation for filing the grievance. Plaintiff alleges that as a result of these actions he has suffered emotional distress for which he seeks unspecified monetary damages. Plaintiff also asks the court to punish the defendants.

Defendants Bortolamedi, Yelton, and Johnson move to dismiss plaintiff's claims against them for failure to state a claim. Plaintiff has filed two documents in opposition to the motion, one on June 5, 2006, and another on October 25, 2006. Defendants filed a reply brief in support of the motion to dismiss on October 31, 2006, to which plaintiff filed a reply on November 15, 2006.

Having reviewed all submitted papers concerning defendants' motion to dismiss, the court issues the following findings and recommendations.

II. <u>MOTION TO DISMISS</u>

Defendants Bortolamedi, Yelton, and Johnson move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the claims against them.

A. <u>Standard</u>

A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6) unless it appears beyond doubt that plaintiff can prove no set of facts in support of its claims which would entitle plaintiff to relief. *NOW, Inc. v. Schiedler*, 510 U.S. 249, 256 (1994); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274-75 (9th Cir. 1993). Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

The complaint's factual allegations are accepted as true. *Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984). The court construes the pleading in the light

most favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). General allegations are presumed to include specific facts necessary to support the claim. *NOW*, 510 U.S. at 256 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

However, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

B. Analysis

Plaintiff seeks relief under 42 U.S.C. § 1983 for alleged violations of his civil rights by defendants. Plaintiff claims that defendants Bortolamedi and Yelton discriminated against him when they allegedly drew derogatory pictures on plaintiff's prison i.d. card.[1] Plaintiff does not

---

[1] Plaintiff alleges that defendant Bortolamedi drew on his i.d. card on April 15, 2000, and that defendant Yelton drew a similar picture on April 25, 2000. Plaintiff does not allege in the complaint, but does allege in his "affidavit in opposition to defendants' motion to dismiss," filed June 5, 2006, that defendant Yelton drew on plaintiff's i.d. card in retaliation for plaintiff's filing of the 602 inmate appeal against Bortolamedi. *See* "Affidavit in Opposition,"filed June 5, 2006, at ¶ 9. The notice pleading requirements of the Federal Rules of Civil Procedure do not allow a plaintiff to assert new allegations in an opposition that do not appear in the complaint. *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006). Plaintiff did not plead any facts in the complaint to give defendants notice that he intended to file a retaliation claim against Yelton. Even if he had, plaintiff fails to allege in any of his papers that Yelton knew about plaintiff's grievance against Bortolamedi. Neither does plaintiff allege that Yelton's drawing on his i.d. card resulted in any injury or otherwise chilled plaintiff's exercise of his First Amendment right to file grievances. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)

allege in the complaint that these acts violated equal protection, but does so allege in his opposition filed on October 25, 2006. *See* Opp'n, at ¶¶ 12-13.  The court construes plaintiff's allegations regarding the alleged racially derogatory drawings as asserting a violation of equal protection under the Fourteenth Amendment.

To state a claim for an equal protection violation, a plaintiff must allege that defendant intentionally discriminated against him based upon membership in a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  Although plaintiff alleges that defendants Bortolamedi and Yelton discriminated against him on the basis of race, the actions he complains of do not rise to the level of a constitutional deprivation. *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) ("verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.") (quoting *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)).  In *Freeman*, the court held that prison officials' abusive language towards Muslim inmates was insufficient to establish an equal protection violation.  Here, the alleged racially derogatory drawings on plaintiff's prison i.d. card are analogous to the abusive epithets at issue in *Freeman*.  *See also Graves v. North Dakota State Penitentiary*, 325 F. Supp. 2d 1009 (D.N.D. 2004) (holding that a racially derogatory drawing shown to an inmate by correctional officers did not amount to unconstitutional racial discrimination under the Fourteenth Amendment).  Similarly, that defendant Yelton allegedly joined defendant Bortolamedi in laughing at the drawing does not constitute actionable discrimination under the Fourteenth Amendment.  The court therefore finds that the alleged actions by defendants Yelton and Bortolamedi are insufficient to state a constitutional deprivation under the Fourteenth Amendment.

////

---

(To state a claim for retaliation, plaintiff must allege that on a specified date an individual state actor took adverse action against plaintiff for his engagement in a constitutionally protected activity and the adverse action chilled plaintiff's exercise of his rights).  Accordingly, plaintiff's allegations regarding "retaliation" by Yelton – which appear for the first time in plaintiff's June 5, 2006, "affidavit in opposition" – are insufficient to state a claim.

4

Plaintiff makes no other actionable allegation with respect to defendant Bortolamedi. However, with regard to defendants Yelton and Johnson, plaintiff alleges that both defendants interfered with plaintiff's grievance proceedings against Bortolamedi.  More specifically, plaintiff alleges that on June 21, 2000, while plaintiff was gathering witness statements, defendant Yelton told him in an aggressive and threatening tone to return to the complex.  *See* "Declaration of Plaintiff" (attached to the complaint), at 6:2-21.  Plaintiff alleges that this conduct intimidated his witnesses.  *Id.*

As to defendant Johnson, plaintiff alleges that Johnson did not call all of plaintiff's witness, then lied and told the associate warden he had.  *Id.* at 3:8-23.  Plaintiff also alleges that defendant Johnson "coerced and manipulated" inmate statements and wrongly concluded that the drawings at issues were not racial in nature.  *Id.*

Because plaintiff's allegations against Yelton and Johnson essentially concern the fairness of the grievance proceedings, the court construes plaintiff's claims as implicating the Due Process Clause of the Fourteenth Amendment.

The Due Process guarantee of the Fourteenth Amendment "prohibits the States from depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  In 42 U.S.C. § 1983, Congress has created a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005).  "The Supreme Court has also held that to obtain a protectable right an individual must have 'a legitimate claim of entitlement to it.'" *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (quoting *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979)).  "There is no legitimate claim of entitlement to a grievance procedure."  *Mann*, 855 F.2d at 640 (citations omitted).  Even the non-existence of, or the failure of prison officials to properly implement, an administrative appeals process within the prison system does not raise constitutional concerns.  *Id.*; *see also Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *Flick v. Alba*, 932 F.2d 728 (8th Cir. 1991); *Azeez v.*

5

1  *DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982) ("[A prison] grievance procedure is a procedural
2  right only, it does not confer any substantive right upon the inmates.  Hence, it does not give rise
3  to a protected liberty interest requiring the procedural protections envisioned by the fourteenth
4  amendment").

5  Because plaintiff has no legitimate claim of entitlement to the grievance procedures he
6  claims were intereferred with, he cannot state a claim for a due process violation under § 1983.
7  Even in disciplinary proceedings where an inmate faces potential punishment, the Due Process
8  Clause guarantees only a limited right to call witnesses and to present documentary evidence in
9  the inmate's defense.  *Ponte v. Real*, 471 U.S. 491, 495 (1984); *Baxter v. Palmigiano*, 425 U.S.
10 308, 321 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Here, plaintiff alleges that
11 Yelton yelled at him in front of witnesses and thereby intimidated the witnesses.  This is not
12 actionable conduct under § 1983.  Neither are plaintiff's allegations that defendant Johnson
13 manipulated witness statements and lied about interviewing all of plaintiff's witnesses.  These
14 alleged acts do not state a claim for violation of plaintiff's due process rights and are not
15 actionable.

16 To the extent plaintiff seeks to state a claim for the denial of access to the courts based on
17 Yelton and Johnson's alleged actions, he must allege that such acts resulted in the rejection of, or
18 inability to bring, a non-frivolous, actionable claim related to his conviction or conditions of
19 confinement.  *Lewis v. Casey*, 518 U.S. 343, 353, 356 (1996).  A prisoner's First Amendment
20 right to meaningful access to the courts extends to established prison grievance procedures.
21 *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995); *Valandingham v. Bojorquez*, 866 F.2d 1135,
22 1138 (9th Cir. 1989).  A prison official's destruction of legal materials could constitute a denial
23 of meaningful access to the courts.  *See Vigliotto v. Terry*, 873 F.2d 1201, 1202 (9th Cir. 1989).
24 However, the constitutional guarantee of access to the courts encompasses only direct criminal
25 appeals, habeas petitions, and civil rights challenges to the conditions of confinement, and
26 requires a showing of actual prejudice.  *Lewis*, 518 U.S. at 348-49, 354-55; *Simmons v.*

1  *Sacramento County Superior Court*, 318 F.3d 1156, 1159-60 (9th Cir. 2003).  To state a claim
2  that this right was violated, a prisoner must allege that he suffered "actual injury," viz., "actual
3  prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing
4  deadline or to present a claim."  *Lewis*, 518 U.S. at 348.  Based on the allegations in and the
5  attachments to plaintiff's complaint, it is undisputed that he was able to exhaust his
6  administrative remedies and bring the present action.  Indeed, plaintiff has availed himself of all
7  levels of grievance review, including the filing of the present action.  Accordingly, to the extent
8  plaintiff seek to state a claim against defendants Yelton and Johnston for denial of access to the
9  courts, he fails to do so.

10  Finally, because there is no clearly established right to inmate grievance procedures or to
11  be free from insults, the officers are protected from liability under qualified immunity.
12  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"
13  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526
14  (1985)).  It provides "'an *immunity from suit* rather than a mere defense to liability . . . .'"  *Id.*
15  (quoting *Mitchell*, 472 U.S. at 526) (emphasis in original).

16  Two questions determine whether a government official is entitled to qualified immunity.
17  First, the court must determine whether "'[t]aken in the light most favorable to the party
18  asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional
19  right.'"  *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002) (quoting *Saucier*, 533 U.S. at
20  201).  If the answer is "no," the inquiry ends.  *Saucier*, 533 U.S. at 201.  If the answer is "yes,"
21  the court must next determine "whether the right was clearly established."  *Id*.  Unless the law
22  "put the [official] on notice that [his or her] conduct would be clearly unlawful," the official is
23  entitled to qualified immunity.  *Saucier*, 533 U.S. at 202.

24  Here, the alleged conduct of insulting plaintiff by drawing on his i.d. card does not
25  demonstrate violation of a constitutional right.  The allegations regarding defendants'
26  interference with plaintiff's grievance proceedings also fail to demonstrate violation of a

7

constitutional right. Even assuming these alleged acts did violate a constitutional right, neither of the alleged "rights" are clearly established. That is, there is no clearly established right to prison grievance proceedings or to be free from insults. Accordingly, defendants Bortolamedi, Yelton and Johnson are entitled to qualified immunity for the conduct alleged by plaintiff.

For the foregoing reasons, the court recommends that the motion to dismiss filed by defendants Bortolamedi, Yelton and Johnson be granted without leave to amend.

III. <u>MOTION TO COMPEL</u>

Defendants filed a motion to compel discovery responses from plaintiff on October 13, 2006. Pursuant to the scheduling order issued on July 28, 2006, discovery was to be completed by October 13, 2006, and any motions to compel discovery were to be filed by that date.

Defendants served plaintiff with interrogatories and requests for production of documents on August 8, 2006. Pursuant to the discovery order issued on July 28, 2006, responses to written discovery requests were due forty-five days after service of the request. On October 4, 2006, after the responses were due, defendants wrote plaintiff a letter requesting responses. Based on a review of the file, it appears that plaintiff has yet to provide defendants with responses to their written discovery requests. Defendants request an order compelling plaintiff to respond to the discovery, without objections, and seek sanctions in the amount of $250.00.

Although the discovery cut-off date in this action has passed, the court re-opens discovery for the purpose of resolving this motion. Discovery is re-opened for the limited purpose of compelling plaintiff to respond to defendants' interrogatories and requests for production of documents.

Defendants' motion to compel responses to the interrogatories and requests for production of documents is hereby granted. Fed. R. Civ. P. 33(b)(5); Fed. R. Civ. P. 34(b); Fed. R. Civ. P. 37(a)(2)(B). Plaintiff has waived any objections to these discovery requests due to his failure to timely respond to them. Fed. R. Civ. P. 33(b)(4); Fed. R. Civ. P. 34(b); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (citing *Davis v.*

*Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981)).  Plaintiff shall provide written responses, without objections, to the interrogatories and requests for production of documents within thirty (30) days of the date of service of this order.  Defendants' motion for monetary sanctions is denied.

IV. CONCLUSION

In accordance with the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' motion to compel responses to interrogatories and requests for production of documents is granted;

2. Defendants' request for sanctions is denied;

3. Plaintiff shall provide defendants with written responses to the interrogatories and requests for production of documents within thirty (30) days of the date of service of the order. Failure to do so will result in sanctions, which may include a recommendation that the action be dismissed.

Further, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss be granted, and defendants Bortolamedi, Yelton and Johnson be dismissed from the action with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 15, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

9